IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID AND KELLY SCHRAVEN,** | : | |
| on behalf of themselves and all others | : | **CIVIL ACTION** |
| similarly situated, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **PHELAN HALLINAN** | : | |
| **DIAMOND & JONES, LLP, et al.,** | : | No. 15-3397 |
|     Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                 **February 1, 2016**

      David and Kelly Schraven borrowed money from Chase Bank USA, N.A. and secured that loan with a mortgage on their property located in Pittsburgh, Pennsylvania. The Schravens defaulted on the loan, and Phelan Hallinan Diamond & Jones, LLP ("Phelan") filed a foreclosure action against the Schravens in the Allegheny County Court of Common Pleas. The Schravens failed to appear to defend the litigation and a default judgment was entered against them. Eventually, the Schraven's property was sold at sheriff's sale. The Schravens then went to state court in an attempt to strike the foreclosure judgement and set aside the sheriff's sale. This attempt failed.

      The Schravens, on behalf of themselves and all others similarly situated, claim that Defendants charged and collected attorneys' fees, interest, and costs in these state court proceedings that were not authorized by law or permitted by their mortgages. Now before the Court are two motions to dismiss, one filed by Phelan and the other filed by U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-CH2. Because the Court agrees that the *Rooker-Feldman* doctrine bars Plaintiffs' claims in this Court, the motions are granted.

I.  **BACKGROUND**

On July 27, 2006, David and Kelly Schraven entered into a mortgage with Chase Bank USA, N.A. in the amount of $134,100.00. (Am. Compl. ¶ 7.) The mortgage was for the property at 337 Sleepy Hollow Road in Pittsburgh, where the Schravens currently live. (*Id*. ¶¶ 3, 7.) Chase assigned the mortgage to U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Acquisition Trust 206-CH2, Asset Backed Pass-Through Certificates, Series 2006-CH2. (*Id*. ¶ 9.) The Schravens defaulted on December 1, 2008, and U.S. Bank filed a foreclosure action against the Schraven on May 15, 2009. (*Id*. ¶ 10.) The mortgage allowed US Bank to charge the Schravens for attorneys' fees, costs, title evidence, and interest, which the bank's foreclosure complaint did. (*Id*. ¶¶ 11-12.) On August 4, 2009, the prothonotary entered a default judgment against the Schravens in the amount of $141,660.32. (*Id*. ¶ 17.) On September 29, 2009, U.S. Bank filed a praecipe for writ of execution in the amount of $144,594.86. (*Id*. ¶ 20.) On April 29, 2010, US Bank's motion to reassess was granted. (*Id*. ¶ 21.)

In October of 2010, the Schravens filed for Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Western District of Pennsylvania. Phelan filed an amended proof of claim on behalf of the Trustee. The proof of claim sought $161,241.55, and included the fees and costs—including attorneys' fees—incurred through November 9, 2010. Plaintiffs proposed a Chapter 13 plan, which the court confirmed. The Schravens defaulted on the plan as well as a subsequent modified plan. The bankruptcy case was ultimately dismissed.

Phelan filed praecipes to reissue a writ of execution on July 22, 2010; November 14, 2013; and June 17, 2014. (*Id*. ¶ 23.) Each praecipe sought anticipated interest that had not yet been incurred as of the date of the filing. (*Id*. ¶ 24.) The Schravens' property was sold at sheriff's sale on December

1, 2014. (*Id*. ¶ 32.) Plaintiffs subsequently sought to have the state court strike the foreclosure judgment and set aside the sheriff's sale, but the request was denied. (Am. Compl. Ex. G [Feb. 9, 2015 Docket Entry Denying Petition to Strike/Open Default Judgment] & Def. Phelan Hallinan Diamond & Jones, LLP's Mot. to Dismiss the Am. Compl. Ex. D [July 16, 2015 Order Denying Petition to Set Aside Sheriff's Sale].)

The Schravens allege that the costs charged to them and the putative class members "were not authorized by their respective mortgages." (Am. Compl. ¶ 16.) They claim these costs were not determined to be costs incurred "in pursuing remedies provided by the mortgage" nor were the attorneys' fees "determined to be reasonable by an Article V court through the lodestar method." (*Id*.) The Schravens claim that they "were charged and/or paid for unauthorized, unliquidated and/or illegal fees in default judgments and post-default judgment amounts." (*Id*. ¶ 33.) The Schravens also claim their rights to cure their default were negated by the imposition and collection of these allegedly illegal fees. (*Id*. ¶¶ 34-38.)

The Schravens' lawsuit is brought on behalf of themselves and those similarly situated. The purported class includes those homeowners "who obtained financing secured by a first mortgage on residential property located within the Commonwealth of Pennsylvania who had default judgments and/or writs of execution filed against them in a foreclosure action where there were demands for attorneys' fees, foreclosure costs, escrow deficits or late charges entered on the docket, within a period of six years from the date of the filing of the original Complaint." (*Id*. ¶ 40.) The purported class is limited to foreclosure actions brought by Phelan in Pennsylvania. (*Id*. ¶ 39.) The Amended Complaint consists of a claim for breach of contract against U.S. Bank, a claim against U.S. Bank and Phelan for violating the Fair Debt Collection Practices Act ("FDCPA") by charging post-

judgment interest before it was incurred, a claim against U.S. Bank and Phelan for violating the FDCPA by improperly demanding attorneys' fees for pursuing a default judgment and writ of execution, a claim against US Bank and Phelan for violating Act 6, and a claim against U.S. Bank and Phelan for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

**II.     DISCUSSION**

Defendants raise a number of arguments in favor of dismissing Plaintiffs' claims, including the *Rooker-Feldman* doctrine. Because the Court agrees that the *Rooker-Feldman* doctrine bars all of Plaintiffs' claims, the Court will address only that issue.

The *Rooker-Feldman* doctrine prohibits federal courts from adjudicating certain "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine strips federal courts of subject-matter jurisdiction over cases that are essentially appeals from state-court judgments. *E.B. v. Verniero*, 119 F.3d 1077, 1090 (3d Cir. 1997) ("The so-called *Rooker-Feldman* doctrine teaches that, by negative implication, the inferior federal courts lack subject matter jurisdiction to review . . . final decisions of lower state courts.").

Defendants argue that Plaintiffs' claims are barred because the claims rely on a final, non-appealable judgment. (Def. Phelan Hallinan Diamond & Jones, LLP's Mot. to Dismiss the Am. Compl. at 10-11.) Plaintiffs argue that the *Rooker-Feldman* doctrine does not apply here because Plaintiffs are challenging the post-judgment activities of a non-judicial officer. (Opp'n to Mots. to Dismiss at 11.)

As a starting point, the *Rooker–Feldman* doctrine applies to all judgments by a state court, including default judgments and judgments by confession. The doctrine's application to default judgments derives from the more general precept that state court default judgments and confessed judgments are treated by federal courts as judgments on the merits. *See, e.g.*, *In re Calabria*, 418 B.R. 862, 866 (Bankr. W.D. Pa. 2009) (default judgments); *Stoss v. Singer Fin. Corp.*, Civ. A. No. 08-5968, 2010 WL 678115, at *3 (E.D. Pa. Feb. 24, 2010); *see also In re James*, 940 F.2d 46, 52–53 (3d Cir. 1991); *Conte v. Mortg. Elec. Registration Sys.*, Civ. A. No. 14-6788, 2015 WL 1400997 (E.D. Pa. Mar. 27, 2015) (barring claims arising out of state court default judgment based on *Rooker-Feldman*).

The *Rooker-Feldman* doctrine will apply if four requirements are met: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgment; (3) those judgments were rendered before the federal lawsuit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Great W. Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). *Rooker-Feldman* will bar a claim if the federal claim was actually litigated in state court before the filing of a federal action or if the federal claim is "inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In re Madera*, 586 F. 3d 228, 222 (3d Cir. 2009)*; see also Great W.*, 615 F.3d at 169-70 (noting that use of the phrase "inextricably intertwined" does not expand the doctrine but rather acts as a descriptive label for claims falling within the doctrine). If the relief sought in federal court demands a determination that the state court's decision was wrong or the federal court's relief would void the state court's ruling, then the claims are inextricably intertwined, and the federal claim cannot proceed. *ITT Corp. v. Intelnet Int'l*,

5

366 F.3d 205, 211 (3d Cir. 2004).

The first and third requirements are not at issue here. The state court rendered its judgments against Plaintiffs before they filed this federal lawsuit. The critical question here stems from the second requirement: what is the cause of Plaintiffs' alleged injury?

In the underlying mortgage foreclosure action, the Allegheny County Court of Common Pleas issued a default judgment against the Schravens. It then denied their petition to strike or open the default judgment on February 10, 2015. This judgment necessarily means that the mortgage was in default, the mortgagors failed to pay interest on their obligation, and the recorded mortgage was in the specified amount. *See Laychock v. Wells Fargo Home Mortg.*, Civ. A. No. 07-4478, 2008 WL 2890962, at *3 (E.D. Pa. July 23, 2008). Moreover, a mortgage foreclosure requires a valid mortgage. *Id.*; *see also Conte v. Mortg. Elec. Registration Sys.*, Civ. A. No. 14-6788, 2015 WL 1400997, at *3 (E.D. Pa. Mar. 27, 2015).

The Schravens cannot escape the fact that a decision in their favor here would necessarily require this Court to decide that the state court got it wrong in granting relief in the underlying mortgage foreclosure action. *See Laychock*, 2008 WL 2890962, at *3 ("All her claims for monetary damages, except for TILA, HOEPA, and RESPA, would require me to decide Wells Fargo and Wachovia wrongfully double-debited her account and initiated a wrongful foreclosure against her. Such a decision requires me to find the Philadelphia Court of Common Pleas Judge's decision, Laychock failed to make her monthly mortgage payments, was wrong."). Because the essence of Plaintiffs' Amended Complaint is that they were improperly charged certain amounts, the only way to remedy Plaintiffs' injury would be to strike the default and conclude that the sums charged were improper. The *Rooker-Feldman* doctrine therefore requires that this Court dismiss Plaintiffs' claims.

*See Minton v. Cach, LLC*, Civ. A. No. 14-4371, 2014 WL 4764183, at *3 (E.D. Pa. Sept. 25, 2014) (dismissing case based on *Rooker-Feldman* when plaintiff alleged that defendants violated the FDCPA by attempting to execute on judgment which included interest and fees deemed owed).

The Court finds the reasoning of my learned colleague, The Honorable Timothy J. Savage, in the recent decision of *Hua v. U.S. Bank National Association*, Civ. A. No. 14-6767, 2015 WL 1071606 (E.D. Pa. Mar. 11, 2015), to be instructive. Hua alleged that the defendants violated the FDCPA when they sought to collect on a mortgage foreclosure action in state court. *Id*. at *1. Among her charges, she claimed that the defendants attempted to collect fees, including attorneys' fees and costs, not permitted by the mortgage loan's terms. *Id*. Prior to filing her complaint, a state court entered a foreclosure judgement and a money judgment against Hua. *Id*. The prothonotary issued a writ of execution and a sheriff's sale was scheduled. *Id*. While Hua's federal complaint was pending, she filed a motion in state court to strike the pleadings in the foreclosure action. *Id*. at *2. That motion was denied. *Id*.

The federal court granted the defendants' motions to dismiss based on the *Rooker-Feldman* doctrine. The court focused on the source of the plaintiffs' injury, and it concluded that the lawsuit was barred because the state court's mortgage foreclosure judgment—and not the defendants' actions—was responsible for any injury that the plaintiffs suffered. *Id*. at *3. "To grant Hua relief, we would have to reject the state court judgment. . . . We cannot review the state court judgment. Nor can we reject it." *Id*.; *see also Minton*, 2014 WL 4764183, at *4 ("To find that [defendant] included unlawful interest and attorney's fees in the judgment amount, we would have to review and reject the state judgment. Only by reviewing the judgment could we determine if the judgment amount had been properly calculated.").

Plaintiffs raise two arguments to support their contention that *Rooker-Feldman* does not bar their claims. First, they contend that "the Default Judgement was issued by an Article I prothonotary, meaning that the judgment was not reviewed by any court or determined through a judicial process. Therefore, this case involves a non-judicial judgment that falls outside of the Rooker-Feldman doctrine." (Opp'n to Mots. to Dismiss at 12.) According to the Schravens, their "loss only occurred by way of a prothonotary's default judgment." (*Id*. at 13.) Second, Plaintiffs argue that they are merely objecting to what occurred after the entry of judgment. (*Id*. ("The Schravens are not challenging injuries brought about by a final judicial judgment, but by US Bank's attempt to obtain post-judgment relief through non-judicial means by filing unverified and unsupported writs demanding substantial fees and costs.").)

This Court is unpersuaded. First, Plaintiffs do not define the term non-judicial judgment. To the extent Plaintiffs seek to create a class of judgments entitled to less weight than judicial judgments, the Court rejects that argument. Here, there is no doubt that a judgment was entered against the Schravens and that that judgment was not stricken or opened at the state court level. The Schravens are wrong to suggest that their alleged injury stems from what they term "the prothonotary's limited, ministerial powers." (Opp'n to Mots. to Dismiss at 13.) Rather, any alleged injuries arise out of validly entered and enforceable judgments.

Plaintiffs' second argument is more creative than the first argument, but is ultimately an attempt to twist the proceedings below to evade the *Rooker-Feldman* doctrine. It is not Defendants' conduct post-judgment that is the cause of any injury. Rather, it is the amount of the judgment which Plaintiffs dispute. Therefore, the Court cannot afford Plaintiffs relief without overturning or altering the judgment below. Essentially, Plaintiffs invite the Court to concur with their claim that certain

fees and costs were improperly charged against them. This is precisely what the *Rooker-Feldman* doctrine prohibits.

### III. CONCLUSION

Plaintiffs claim that they were improperly charged fees and costs not authorized by their mortgage. A state court proceeding has already affirmed the fees and costs associated with the Schravens' mortgage. Therefore, this Court cannot agree with Plaintiffs' argument and award relief, without this Court holding that the state court got it wrong and never should have awarded these fees and costs. This the Court cannot do. Accordingly, Defendants' motions to dismiss are granted. An Order consistent with this Memorandum will be docketed separately.